2012 UT 36

**STATE of Utah, Plaintiff and Appellant,**

**v.**

**APOTEX CORPORATION, Baxter Healthcare Corporation, Boehringer Ingelheim Corporation, Mallinckrodt Inc., CSL Behring, Forest Laboratories, Inc., Morton Grove Pharmaceuticals, Inc., Mutual Pharmaceutical Company, Inc., Novartis Pharmaceuticals Corporation, Otsuka America, Inc., Pfizer, Inc., Qualitest Pharmaceuticals, Inc., Schering–Plough Corporation, Schwarz Pharma USA Holdings, Inc., Taro Pharmaceuticals USA, Inc., Upsher–Smith, Inc., and Wyeth, Inc., Defendants and Appellees.**

No. 20100257.

Supreme Court of Utah.

June 19, 2012.

Mark L. Shurtleff, Att'y Gen., Robert Steed, Asst. Att'y Gen., Roman Shaul, W. Daniel Dee Miles III, H. Clay Barnett III, J. Paul Lynn, Timothy Robert Fielder, Special Asst. Att'ys Gen., David C. Biggs, Joseph W. Steele, Salt Lake City, for plaintiff.

Mathew A. Steward, Robert D. Andersen, Salt Lake City, Frederick R. Ball, David I. Curkovic, Chicago, IL, for Morton Grove Pharmaceuticals, Inc.

George M. Haley, Stephen M. Sansom, Salt Lake City, John C. Dodds, Erica Smith–Klocek, Kathryn E. Potalivo, Scott A. Stempel, Philadelphia, PA, for Pfizer, Inc.

Chief Justice DURHAM, opinion of the Court:

## INTRODUCTION

¶ 1 The State of Utah appeals the dismissal of its complaint against seventeen pharmaceutical companies, which the State alleges defrauded Utah's Medicaid program by reporting inflated drug prices. In its complaint, the State pursued two causes of action: violation of the Utah False Claims Act (UFCA) and fraudulent misrepresentation. After allowing the State to amend its complaint, the district court dismissed these claims with prejudice, based on three alternative grounds. It concluded first that the State had not pled its UFCA and fraudulent misrepresentation claims with particularity, as required by rule 9(b) of the Utah Rules of Civil Procedure. Second, the court held that the State's complaint failed to allege critical elements of its claims, warranting dismissal under rule 12(b)(6) of the Utah Rules of Civil Procedure. Finally, the court dismissed the State's UFCA cause of action for claims alleged to have arisen before April 30, 2006, because these claims were barred under a one-year statute of limitations.

¶ 2 We reverse in part and affirm in part the district court's order of dismissal.[1] First, we articulate the appropriate rule 9(b) standard for claims alleging a widespread scheme to commit fraud and submit false claims. Although the State's complaint is insufficiently particular under the standard we adopt today, we conclude that it is in the interest of justice to grant the State leave to amend its complaint under the new standard. Second, we hold that the district court erred in dismissing the State's claims under rule 12(b)(6) because the State alleged all elements of its causes of action. Finally, we affirm the district court's application of the one-year statute of limitations to the State's UFCA cause of action and its dismissal of those claims alleged to have arisen before April 30, 2006. Accordingly, we remand this case to the district court for proceedings consistent with this opinion.

## BACKGROUND

¶ 3 "On appeal from a motion to dismiss, we review the facts only as they are alleged in the complaint. We accept the factual allegations as true and draw all reasonable inferences from those facts in a light most favorable to the plaintiff." *Peck v. State*, 2008 UT 39, ¶ 2, 191 P.3d 4 (internal quotation marks omitted).

¶ 4 In May 2008, the State of Utah filed a lawsuit against seventeen pharmaceutical companies (Defendants).[2] The State alleged that the Defendants had violated the UFCA and had committed fraudulent misrepresentation when they engaged in a drug-pricing scheme that resulted in overpayments from the state's Medicaid program.

¶ 5 According to the State, the Defendants "knowingly, willfully, wantonly, and/or intentionally provided, or caused to be provided, false and inflated" drug-pricing information to third-party reporting services. These reporting services then published price indices

---

1. The district court issued separate orders of dismissal because various defendants moved to dismiss the State's complaint or joined other defendants' motions. Our holdings today apply to each of the district court's orders, except for its order as to Boehringer Ingelheim Corporation (BIC). As discussed below, we affirm the court's dismissal of the State's claims against BIC.

2. The original complaint, filed May 8, 2008, named Covidien Ltd. as a defendant. The State amended its complaint the next month to change Covidien to Mallinckrodt Inc.

for drugs, including their average wholesale prices (AWPs), based on the information the Defendants had provided. Utah Medicaid then used this published information in calculating reimbursements to Medicaid providers, such as pharmacies and physicians, who dispensed the Defendants' drugs. Allegedly, as a result of the Defendants' reporting of inflated drug prices to third-party reporting services, Utah Medicaid significantly overpaid in its reimbursements to providers.[3]

¶ 6 In the district court, the Defendants moved to dismiss the State's amended complaint, arguing that it had failed to plead its UFCA and fraudulent misrepresentation claims with particularity, as required under rule 9(b) of the Utah Rules of Civil Procedure, and that it had failed to state a claim upon which relief could be granted under rule 12(b)(6). The Defendants asserted that the complaint did not "delineate each individual defendan[t's] alleged misconduct, [did] not elaborate as to which defendant reported which false and inflated prices and [did] not identify which defendant provided such allegedly inflated pricing information to the 'industry reporting services.' "

¶ 7 The district court concluded that the State had failed to plead its fraud and UFCA claims with particularity. Despite this failure, the court granted the State leave to amend its complaint. It required the State to

(1) identify the specific drug at issue; (2) identify the specific defendant involved in that drug's sale, manufacture or for which they provide prices ...; (3) [identify] the allegedly false publication of that specific drug's pricing, to whom that publication was made and when; and (4) [identify] whether the State actually used or relied on the allegedly false pricing information which was reported in setting reimbursement rates.

In addition, with respect to defendant Boehringer Ingelheim Corp. (BIC), the court found that the State's complaint focused on BIC's subsidiaries, which were not named defendants and had not been served with process. It required the State to focus on BIC's "separate corporate existence and identify only those drugs for which BIC, and not its corporate subsidiaries, is legally responsible."

¶ 8 The State amended its complaint (Second Amended Complaint or Complaint), and the Defendants again moved for dismissal under rules 9(b) and 12(b)(6) of the Utah Rules of Civil Procedure. They argued that the State had ignored the district court's order by failing to particularize its allegations and by failing to allege critical elements of its causes of action. In addition, the Defendants contended that the statute of limitations had run on many of the State's claims under the UFCA. They noted that before April 30, 2007, the statute of limitations for claims under the UFCA was one year. *See* UTAH CODE § 78-12-29(3) (1998) (providing a one-year limitations period for actions "upon a statute ... for a forfeiture or penalty to the state"). The legislature amended the UFCA to provide an extended limitations period, effective April 30, 2007. However, the Defendants argued that, even if the amended limitations period were retroactive, it could not work to revive claims that had expired under the one-year period.

¶ 9 For its part, BIC argued separately that the State had again lumped it in with its subsidiaries, who had still not been named as defendants or served with process. It noted that the Second Amended Complaint referred to them collectively as the "Boehringer Defendants."

¶ 10 In response, the State argued that the Complaint "vastly exceed[ed]" notice pleading requirements and that "[t]he Defendants know exactly what is at issue." The State contended that attached to the Second Amended Complaint was an exhibit listing the specific drugs at issue (Exhibit A). It also defended its use of general allegations against the Defendants because all had en-

---

**3.** It is worth noting that at oral argument the State clarified that the Defendants' goal in this alleged scheme was to increase the sales and market share of their drugs. This is a common allegation in drug-pricing litigation across the country. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F.Supp.2d 20, 36 (D.Mass.2007) (explaining that providers have incentives to choose drugs with inflated AWPs).

gaged in a uniform practice of reporting false and fictitious prices. Alternatively, the State argued that either rule 9(b) should not apply to its UFCA cause of action because it was distinct from fraud, or the district court should apply a relaxed rule 9(b) standard. With respect to the Defendants' statute of limitations argument, the State argued only that the 2007 amendment lengthening the statute of limitations was retroactive and therefore applied to its UFCA cause of action.

¶ 11 The district court granted the Defendants' motion to dismiss the State's Complaint with prejudice on three alternative grounds. It concluded that (1) the State's UFCA and fraudulent misrepresentation claims lacked particularity under rule 9(b); (2) the State had failed to provide critical elements of its claims, as required by rule 12(b)(6); and (3) the State's UFCA cause of action for conduct before April 30, 2006, was barred by the one-year statute of limitations.

¶ 12 With respect to rule 9(b), the court concluded that the rule applies to UFCA claims and that a relaxed standard was not warranted. It also found that the State had "failed to identify each defendant's allegedly fraudulent misrepresentations and [UFCA] violations with particularity" but instead offered only "broad conjecture" of alleged false or fraudulent statements that the Defendants made as a group. The court further rejected Exhibit A as being too general and for failing to identify "the allegedly false publication of each specific drug's pricing, to whom that publication was made and when."

¶ 13 The district court alternatively dismissed the Second Amended Complaint under rule 12(b)(6), concluding that the State not only failed to plead its claims with particularity, but that it "also failed to allege fundamental elements of . . . fraudulent misrepresentation and for relief under the Utah False Claims Act."

¶ 14 On the statute of limitations issue, the court concluded that before the 2007 amendments to the UFCA, the applicable limitations period was one year. *See Id.* ("An action may be brought within one year . . . upon a statute . . . for a forfeiture or penalty to the state."). Although the amendments expanded the limitations period and expressly provided for the new limitations period to be retroactive, the court held that "[t]he retroactive application of the amended statute of limitations provision cannot operate to revive claims that were already time-barred under the prior version of the statute." The court therefore dismissed with prejudice the UFCA claims that the State alleged to have occurred before April 30, 2006—one year before the effective date of the UFCA amendments.

¶ 15 The State appealed the district court's dismissal of the Second Amended Complaint to this court. We have jurisdiction under section 78A-3-102(3)(j) of the Utah Code.

## STANDARD OF REVIEW

¶ 16 "We review the grant of a motion to dismiss for correctness, granting no deference to the decision of the district court." *Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 14, 243 P.3d 1275.

## ANALYSIS

¶ 17 The State appeals the district court's dismissal of its Second Amended Complaint. First, it argues that the court erred when it held that the State failed to plead its claims with particularity under rule 9(b) of the Utah Rules of Civil Procedure. Second, the State argues that it pled all the elements of its UFCA and fraudulent misrepresentation claims, and thus dismissal of the claims under rule 12(b)(6) was inappropriate. Finally, the State argues that the district court erred in applying the one-year statute of limitations for causes of action "upon a statute . . . for a forfeiture or penalty to the state." UTAH CODE § 78-12-29(3) (1998). It asserts that the amended UFCA provides a longer, retroactive limitations period that should apply. Also, the State contends that if the one-year period does apply, it affects only *penalties* under the UFCA, not the remedies of restitution and costs of enforcement under the Act.

### I. RULE 9(b)

¶ 18 The district court dismissed the State's fraudulent misrepresentation and

UFCA claims as insufficiently pled under rule 9(b) of the Utah Rules of Civil Procedure. On appeal, the State makes a threshold argument that the court erred because rule 9(b) does not apply to claims brought under the UFCA. Alternatively, it argues that the court erred because the Second Amended Complaint was sufficiently particular in pleading the UFCA and fraudulent misrepresentation causes of action. We address these arguments in turn.

### A. Rule 9(b) and the UFCA

¶ 19 The district court held that rule 9(b) applies to claims under the UFCA and denied the State's request to apply a relaxed 9(b) standard. On appeal, the State argues that rule 9(b) does not apply to UFCA causes of action because the Act does not require fraudulent intent, but rather the knowing submission of a false claim.

■ ¶ 20 We affirm the district court's conclusion that rule 9(b) applies to causes of action under the UFCA. However, we hold that a relaxed standard is appropriate where a plaintiff asserts a widespread fraudulent scheme that involves the submission of many false claims over a lengthy period. Under this standard, if it would be impossible or unwieldy to allege the details of every false claim submitted, a plaintiff may still satisfy rule 9(b)'s particularity requirement by alleging the details of the fraudulent scheme with particularity and by providing "reliable indicia that lead to a strong inference that [false] claims were actually submitted." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir.2009). In this respect, our analysis of rule 9(b)'s application to the State's UFCA cause of action differs from the district court's, and we reject its reasoning to the extent that it conflicts with the standard articulated in this opinion.

■ ¶ 21 Rule 9(b) of the Utah Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Under this standard, a complaint cannot survive dismissal by pleading "mere conclusory allegations … unsupported by a recitation of relevant surrounding facts." *Chapman ex rel. Chapman v. Primary Children's Hosp.*, 784 P.2d 1181, 1186 (Utah 1989); *see also Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35 ("[T]he mere recitation by a plaintiff of the elements of fraud in a complaint does not satisfy the particularity requirement."). However, "a sufficiently clear and specific description of the facts underlying the [plaintiff's] claim of [fraud] will satisfy the requirements of rule 9(b)." *Hill v. Allred*, 2001 UT 16, ¶ 14, 28 P.3d 1271 (first alteration in original) (internal quotation marks omitted).

■ ¶ 22 Rule 9(b) also is not limited to allegations of common law fraud. *Williams v. State Farm Ins. Co.*, 656 P.2d 966, 972 (Utah 1982). Rather, its purpose "dictates that it reach all circumstances where the pleader alleges the kind of misrepresentations, omissions, or other deceptions covered by the term 'fraud' in its *broadest dimension.*" *Id.* (emphasis added).

¶ 23 Our application of rule 9(b) to "deceptions covered by the term 'fraud' in its broadest dimension" supports the extension of the particularity requirement to claims brought under the UFCA. This extension is not unique. Every federal circuit court to consider the issue has concluded that claims brought under the federal False Claims Act (FCA) must be pled with particularity under rule 9(b) of the Federal Rules of Civil Procedure.[4] The basis for requiring particularity in federal pleadings is that "the False Claims Act is self-evidently an anti-fraud statute."

---

4. *See U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir.2009); *Gold v. Morrison–Knudsen Co.*, 68 F.3d 1475, 1476–77 (2d Cir. 1995); *U.S. ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 n. 9 (3d Cir.2004); *U.S. ex rel. Godfrey v. KBR, Inc.*, 360 Fed.Appx. 407, 410 (4th Cir.2010); *Kanneganti*, 565 F.3d 180, 185 (5th Cir.2009); *U.S. ex rel. Snapp, Inc. v. Ford Motor Co.*, 618 F.3d 505, 512–13 (6th Cir.2010); *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir.2005); *U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir.2009); *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.2010); *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir.2010); *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir.2009); *U.S. ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551 (D.C.Cir.2002).

*U.S. ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551 (D.C.Cir.2002). A few state courts also have considered the issue with respect to state FCA claims and have determined that such claims must be pled with particularity.[5] *See, e.g., State ex rel. McCann v. Bank of Am., N.A.*, 191 Cal. App.4th 897, 120 Cal.Rptr.3d 204, 210 (2011) ("As in any action sounding in fraud, the allegations of a [California Fraudulent Claims Act] complaint must be pleaded with particularity." (internal quotation marks omitted)); *State ex rel. Grupp v. DHL Express (USA), Inc.*, 28 Misc.3d 973, 907 N.Y.S.2d 772, 782–83 (Sup.Ct.2010) (applying New York's version of rule 9(b) requiring pleading of facts "sufficient to permit a reasonable inference of the alleged conduct"), *rev'd on other grounds*, 83 A.D.3d 1450, 922 N.Y.S.2d 888 (2011).

¶ 24 The clearest support for applying rule 9(b) to this case, however, comes from the "massive, decade-long, nationwide, multi-district class action against thirteen pharmaceutical companies ... involv[ing] the pricing of pharmaceutical drugs reimbursed by Medicare," which is still pending before the U.S. District Court for the District of Massachusetts. *In re Pharm. Indus. Average Wholesale Price Litig.*, 277 F.R.D. 52, 55 (D.Mass. 2011). In that litigation, containing claims similar to those in this case, the federal court has consistently required plaintiffs to satisfy rule 9(b)'s particularity requirement in pursuing claims under the federal FCA. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, 478 F.Supp.2d 164, 171 (D.Mass. 2007).

¶ 25 Being persuaded by the wisdom of the virtually unanimous authority on this question, we hold that rule 9(b) of the Utah Rules of Civil Procedure applies to pleading causes of action under the UFCA. This conclusion is in accord with the conclusions of other courts on the subject and is in line with our prece-

dent applying rule 9(b) to claims of fraud, as that term is used in its "broadest dimension." *Williams*, 656 P.2d at 972.

¶ 26 Having concluded that rule 9(b) applies to claims under the UFCA, we still must determine what degree of particularity is required in circumstances such as these. Although courts have been in agreement that FCA claims must satisfy rule 9(b), their description of the degree of particularity required is less cohesive. The general rule is that an FCA claim "must specify the time, place, and content of [the] alleged false representation," as well as the entity that relayed the alleged false claim. *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir.2009) (internal quotation marks omitted). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Godfrey v. KBR, Inc.*, 360 Fed.Appx. 407, 410 (4th Cir.2010) (internal quotation marks omitted).

¶ 27 This standard is applicable in most instances, but it "is not a straitjacket for Rule 9(b)." *Kanneganti*, 565 F.3d at 190. "Rather, the rule is context specific and flexible and must remain so to achieve the remedial purpose" of the UFCA. *Id.* At times, the breadth of an alleged scheme warrants a more lenient application of rule 9(b). *See U.S. ex rel. Harris v. Bernad*, 275 F.Supp.2d 1, 7–8 (D.D.C.2003). For example, "where the alleged fraudulent scheme involved numerous transactions that occurred over a long period of time, courts have found it impractical to require the plaintiff to plead the specifics with respect to each and every instance of fraudulent conduct." *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333 (D.Conn.2004). Additionally, "Rule 9(b)'s heightened pleading standard may be applied less stringently when the specific factual information is peculiarly within the defendant's knowledge or control." *Id.* at 334.

---

**5.** The State cites only one case to the contrary. The Court of Chancery of Delaware held in *State ex rel. Brady v. Publishers Clearing House* that the "remedial goals" of the Delaware Consumer Fraud Act and the Delaware Uniform Deceptive Trade Practices Act were "inconsistent with the application of the particularized pleading requirements of Rule 9(b) to enforcement actions brought by the Attorney General to protect the consuming public." 787 A.2d 111, 117 (Del.Ch. 2001). The authority of this case is questionable, however, and we decline to follow it. *See Sammons v. Hartford Underwriters Ins. Co.*, CIV. A.S09C–12–026RFS, 2010 WL 1267222 (Del.Super.Ct. Apr. 1, 2010) (distinguishing *Publishers Clearing House* and holding that "Rule 9(b) pleading requirements apply to actions brought under the [Delaware Consumer Fraud Act]").

¶ 28 We agree with those courts that take a flexible approach to the application of rule 9(b) to FCA claims, with consideration given to the breadth of the alleged fraudulent scheme and the defendant's control over the factual information necessary to plead fraud with particularity. Under this approach, plaintiffs may not pursue a "guilt-by-association" method of pleading. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F.Supp.2d 196, 209 (D.Mass.2004). But plaintiffs need not plead every instance and detail of every false claim allegedly part of a widespread fraudulent scheme. The fraudulent nature of a false claim may be "harbored in the scheme" itself, rendering the pleading of the "who, what, when, where, and how" of each false claim overly burdensome for plaintiffs and not particularly helpful in notifying defendants of the plaintiffs' theory. *See Kanneganti*, 565 F.3d at 190.

¶ 29 We therefore agree with the rule announced by the U.S. Courts of Appeal for the Fifth and Ninth Circuits that "if [a plaintiff] cannot allege the details of an actually submitted false claim, [the plaintiff] may nevertheless survive [rule 9(b) ] by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted" by each defendant. *Id.; accord Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998–99 (9th Cir.), *cert. denied*, —— U.S. ——, 131 S.Ct. 801, 178 L.Ed.2d 546 (U.S.2010); *see also U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir.2010) ("[C]laims under the FCA need only show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme." (citing *Kanneganti*, 565 F.3d at 190)).

¶ 30 We see no reason that this standard should not also apply to claims of fraudulent misrepresentation that allege a widespread fraudulent scheme and many misrepresentations over a lengthy period. As noted above, the fraud is often "harbored in the scheme" itself. *Kanneganti*, 565 F.3d at 190. Indeed, "[i]t is the scheme in which particular circumstances constituting fraud may be found that make it highly likely the fraud was consummated." *Id.* In rare circumstances such as these—asserting fraud over the course of many years and countless misrepresentations—a more flexible approach to rule 9(b) is useful and sufficient.

### B. Particularity of the Second Amended Complaint

¶ 31 In light of this standard, we now assess the particularity of the State's UFCA and fraudulent misrepresentation claims. We conclude that the Second Amended Complaint alleges with sufficient particularity a widespread scheme to submit false claims and to engage in fraudulent misrepresentations. However, the Complaint does not describe nor reference reliable indicia that lead to a strong inference that any Defendant actually submitted false claims or engaged in fraudulent misrepresentation. Nevertheless, because we had yet to adopt the standard articulated in this opinion at the time the State filed its Second Amended Complaint, and because the district court applied stricter requirements than those we adopt today, we direct the district court on remand to grant the State leave to amend the Complaint to comply with our standard.

¶ 32 We begin by addressing the district court's conclusion that the "level of detail and particularized allegations of a scheme are lacking in this case." We disagree. Although we do not recite here the State's allegations in detail, we note that the Complaint alleges the following basic scheme: (1) over the course of fifteen years, the Defendants knowingly or willfully provided inflated or fictitious drug-pricing data to third-party reporting services; (2) Utah Medicaid used this pricing data and relied upon it to determine reimbursements to Medicaid providers for brand-name and generic drugs; (3) because the Defendants reported inflated drug-pricing data, Utah Medicaid grossly overpaid its providers; and (4) Utah Medicaid's overpayment to providers directly benefited the Defendants. In our view, these basic allegations notify the Defendants with sufficient particularity of what the State is alleging with respect to its UFCA and fraudulent misrepresentation claims. These are not "conclusory allegations" devoid of "relevant

surrounding facts." *Chapman*, 784 P.2d at 1186.

¶ 33 It appears that the district court was most concerned with the Complaint's lack of particularity regarding individual false claims and fraudulent misrepresentations concerning specific drugs and defendants. In its order, the court held that the State must plead facts "such as the time, place, and contents, of false misrepresentations, as well as the identity of the person making the misrepresentation." It also found the State's "failure to identify the allegedly false publication of each specific drug's pricing, to whom that publication was made and when, render[ed] the Second Amended Complaint fatally deficient and unspecific." These requirements were too onerous. As discussed above, the "who, what, when, where, and how" standard is not a "straitjacket" for applying rule 9(b), *Kanneganti*, 565 F.3d at 190, and the relaxed standard adopted in this opinion is more appropriate in circumstances of alleged widespread fraud and false claims.

¶ 34 We do agree with some of the district court's observations, however. It rightly noted that "the Second Amended Complaint merely offers broad conjecture with respect to statements and/or claims that were allegedly false or fraudulent and that were made by the [D]efendants as a group." It also was correct in rejecting the State's Exhibit A, which purported to list the drugs at issue. We agree that Exhibit A "contains drugs that the defendants did not manufacture and products that are referenced only by their chemical compounds" and that it falls "far short of the applicable pleading requirements."

¶ 35 In sum, the district court erred to the extent that it required the State to provide detailed information on every false claim submitted or fraudulent misrepresentation made. Rather, the State was required to provide "reliable indicia that lead to a strong inference that [false] claims were actually submitted" by each defendant or that fraudulent misrepresentations were made. *See Kanneganti*, 565 F.3d at 190. Courts have looked to various factors to determine whether a strong inference of fraud is present, including "factual or statistical evidence

to strengthen the inference of fraud beyond possibility," *U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 579 F.3d 13, 29 (1st Cir.2009) (internal quotation marks omitted); "representative examples" of alleged false claims, *Mason v. Medline Indus., Inc.*, 731 F.Supp.2d 730, 735 (N.D.Ill.2010); and "government investigations" of a defendant, *In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F.Supp.2d at 208. That is not to say that a plaintiff must provide all this information or that this information will always provide reliable indicia that false claims and misrepresentations were made. Rather, the plaintiff must provide an adequate basis for a court to infer that each defendant submitted false claims or made fraudulent misrepresentations as part of a fraudulent scheme.

¶ 36 Although we find the district court's requirement of particularity to be too burdensome, we also conclude that the State failed in its Complaint to provide reliable indicia that could lead a court to infer that false claims or fraudulent misrepresentations were actually made. From the Second Amended Complaint and the State's appellate briefs, it appears that the State's argument is as follows: pharmaceutical companies across the country have reported fictitious drug-pricing data, knowing it would be used in the calculation of state Medicaid reimbursements; the Defendants are pharmaceutical companies; ergo, the Defendants reported fictitious drug-pricing data, knowing it would be used in Utah's Medicaid reimbursements. This syllogism not only fails as a matter of logic, but it also provides no particularity supporting claims of fraud and the submission of false claims by any given defendant. It instead relies on guilt by association. *See id.* at 209.

¶ 37 The State has provided no factual or statistical evidence supporting a strong inference that any defendant committed fraud or submitted false claims. It has provided no information regarding government investigations of any defendant. And, most troublesome, it has provided no representative examples of any defendant submitting a false claim or making a fraudulent misrepresentation. Although representative examples are

"not mandatory ... such examples would go a long way in providing the necessary particularity under Rule 9(b)." *Frazier ex rel. U.S. v. Iasis Healthcare Corp.*, 392 Fed. Appx. 535, 537 (9th Cir.2010) (mem.).[6]

¶ 38 Moreover, we have reviewed a number of complaints from average wholesale price litigation in other jurisdictions. Many of the complaints filed in other states include exhibits listing (1) the national drug codes (NDCs) and names of the drugs at issue; (2) examples of the published, allegedly false AWPs of the drugs; (3) examples of the actual market prices for each drug; and (4) the spread between the actual market prices and the published AWPs. The State provided no such information in the Second Amended Complaint.[7]

¶ 39 In sum, we agree with the State that the district court erred in its strict application of rule 9(b). But we disagree that the Second Amended Complaint is sufficiently particular under a relaxed standard. Because we have never articulated the standard set forth in this opinion, however, we think it appropriate and in the interest of justice to grant the State leave to amend the Complaint in an attempt to comply with the now-clarified standard. *See* UTAH R. CIV. P. 15(a) ("[A] party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."). At a minimum, the State must notify the Defendants which of their drugs are at issue and provide the NDCs of the drugs the State believes are the subject of its claims. Further, the State must provide reliable indicia that would lead to a strong inference that each Defendant actually made false claims and fraudulent misrepresentations. Whatever the indicia—representative examples, statistical evidence, criminal investigations, etc.—the State must particularize its claims with respect to *each* Defendant.

¶ 40 Accordingly, we reverse the district court's dismissal of the State's Complaint under rule 9(b) and direct it to grant the State leave to amend the Complaint in accordance with this opinion.

## II. RULE 12(b)(6)

¶ 41 As an alternative basis for dismissal, the district court held that the Second Amended Complaint did not satisfy rule 12(b)(6) of the Utah Rules of Civil Procedure. It concluded that the State failed to plead fundamental elements of its UFCA and fraudulent misrepresentation claims. On appeal, the State argues that it pled all required elements of its claims.

¶ 42 Under rule 12(b)(6) of the Utah Rules of Civil Procedure, a district court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "A Rule 12(b)(6) motion to dismiss admits the facts alleged in the complaint but challenges the plaintiff's right to relief based on those facts." *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 8, 104 P.3d 1226 (internal quotation marks omitted). Additionally, "our inquiry is concerned solely with the sufficiency of the pleadings, and not the underlying merits of the case." *Id.* (alterations in original) (internal quotation marks omitted).

¶ 43 With this standard in mind, we address the State's UFCA and fraudulent misrepresentation claims and conclude that the district court erred in dismissing these claims under rule 12(b)(6) of the Utah Rules of Civil Procedure.

---

6. Some courts have required plaintiffs, at a minimum, to provide representative examples of false claims submitted to the government. *See, e.g., U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 308 (3d Cir.2011); *Ford Motor Co.*, 618 F.3d at 513; *Hypoguard USA, Inc.*, 559 F.3d at 822; *Mason*, 731 F.Supp.2d at 735. We decline to adopt a per se rule that representative examples are required under rule 9(b), but endorse their use as helpful in establishing the requisite particularity.

7. This lack of detail is in contrast to another of the State's complaints filed in Utah against pharmaceutical companies. *See* Compl. at Ex. A, *State v. Actavis*, No. 070913719, 2007 WL 2848491 (Utah Dist.Ct. Sept. 21, 2007) (listing manufacturers, NDCs, drug names, published AWPs, actual AWPs, and the percent difference between published and actual AWPs).

### A. UFCA

¶ 44 In the Second Amended Complaint, the State alleges that the Defendants violated sections 26–20–3, 26–20–4, and 26–20–7 of the Utah Code. In the district court's rule 12(b)(6) dismissal of the State's UFCA claims, the court did not distinguish among these statutory provisions. Rather, it made a few general observations about the Second Amended Complaint. For example, the court noted that, according to a document from the Utah Department of Health's Division of Health Finance, the State knew in 1999 that "acquisition costs for generic drugs [were] 60.1% below AWP and that AWP does not in fact reflect market prices." Accordingly, the court held that the State could not fulfill two elements of its UFCA claims—namely, that the Defendants knowingly made false claims and that the State was deceived by the published drug-pricing data.

¶ 45 With respect to this conclusion, the district court inappropriately relied on information that went to the merits of the State's claims, rather than taking the allegations in the Second Amended Complaint as true. Moreover, if the Department of Health information had been appropriate for the court to consider, the information speaks to the *State's* knowledge, whereas the UFCA provisions focus on a *defendant's* knowing submission of false claims. The district court's discussion of deception also was error because the UFCA provisions at issue do not include an element of *deception*, but rather require

allegations that false claims were made knowingly.[8] UTAH CODE § 26–20–9.5(1).

¶ 46 We conclude that the district court conflated and confused elements of the UFCA provisions at issue and failed to address the State's actual allegations. We therefore assess the elements of each of the three UFCA provisions listed in the Second Amended Complaint, as well as the State's corresponding allegations.

#### 1. Utah Code Section 26–20–3

■ ¶ 47 Section 26–20–3(2) provides that "[a] person may not make or cause to be made a false statement or false representation of a material fact for use in determining rights to a medical benefit." The UFCA defines "medical benefit" as "a benefit paid or payable to a recipient or a provider ... under any programs for medical assistance of the state." *Id.* § 26–20–2(5)(d). Additionally, a "person" includes individuals and business entities. *Id.* § 26–20–2(6).[9]

¶ 48 In the Second Amended Complaint, the State alleged that each Defendant made or caused to be made false publications of drug-pricing information, which was then used in Utah Medicaid's reimbursement calculus for brand-name and generic drugs. These allegations meet section 26–20–3(2)'s elements of "mak[ing] or caus[ing] to be made a false statement or false representation." The State also alleged the materiality of this information and its use in the determination of reimbursements to Medicaid providers, which would constitute a "medical benefit" under the statute.[10]

---

8. We note that before the UFCA's amendments in 2007, a "false statement" was defined as "a statement ... which is knowingly and *willfully* made." UTAH CODE § 26–20–2(2) (2006) (emphasis added). Even for claims occurring before the amendments, however, "deception" was never an element of the State's UFCA claims.

9. With respect to section 26–20–3, the only notable difference between the pre-amended version of the UFCA and the amended version of the UFCA is its definition of "false statement" and "false representation." Prior to the 2007 amendments, each term was defined as "a statement or representation which is knowingly and *willfully* made if the person making the statement or representation has knowledge of the falsity thereof." *Id.* § 26–20–2(2) (2006) (emphasis added). After the amendments, the terms were defined as any "wholly or partially untrue

statement or representation which is: (a) knowingly made; and (b) a material fact with respect to the claim." *Id.* § 26–20–2(3) (2007). The knowing/willful distinction is immaterial for the State's UFCA allegations, however, because it pled in the Complaint that the "Defendants knowingly, willfully, wantonly, and/or intentionally provided" the false drug-pricing information and that the Defendants knew the pricing information was false.

10. The district court appears to have misread the UFCA's use of the term "medical benefit." It found that the Complaint lacked "allegations concerning the benefit which the defendants derived directly from the State," ostensibly because Medicaid paid reimbursements to its *providers*, not the Defendants. But the statute does not require that the Defendants benefit from the

¶ 49 Accordingly, the district court erred when it concluded that the State failed to state a claim upon which relief could be granted with respect to section 26–20–3 of the Utah Code.

### 2. Section 26–20–4

 ¶ 50 Under section 26–20–4, "[a] person may not solicit, offer, pay, or receive a kickback or bribe in return for . . . the purchasing . . . or ordering of any goods . . . for which payment is or may be made . . . pursuant to a medical benefit program." *Id.* § 26–20–4(2)(a). A kickback or bribe "includes rebates, compensation, or any other form of remuneration which is: (i) direct or indirect; (ii) overt or covert; or (iii) in cash or in kind." *Id.* § 26–20–4.

¶ 51 The Second Amended Complaint states that the "Defendants used undisclosed discounts, rebates and other inducements, which had the effect of lowering the actual wholesale or retail prices paid by wholesalers and retailers as compared to the reported prices." The State therefore alleged that the Defendants offered kickbacks—in the form of rebates—in accordance with the statute. The object of the kickbacks was the Defendants' pharmaceutical drugs, which constitute "goods" under the statute. Finally, the State alleged throughout the Complaint that Utah Medicaid issued reimbursements for the Defendants' drugs. This constitutes "payment . . . pursuant to a medical benefit program."

¶ 52 Accordingly, the district court erred when it concluded that the State failed to state a claim upon which relief could be granted with respect to section 26–20–4 of the Utah Code.

### 3. Section 26–20–7

 ¶ 53 Finally, under section 26–20–7, "[a] person may not make or present or cause to be made or presented to an employ-ee or officer of the state a claim for a medical benefit" that "is wholly or partially false, fictitious, or fraudulent"[11] or that "represent[s] charges at a higher rate than those charged by the provider to the general public." *Id.* § 26–20–7(1)(a), (d).

¶ 54 As discussed above, the State clearly pled that the Defendants "cause[d] to be made or presented" to Utah Medicaid false or fictitious drug-pricing data by reporting inflated prices to third-party reporting services. It further pled that the Defendants knew the pricing data was "wholly or partially false, fictitious, or fraudulent" and that the pricing data it presented to third-party reporting services was at "a higher rate" than the Defendants charged to Medicaid providers. These allegations fit the elements of section 26–20–7.

¶ 55 Accordingly, the district court erred when it concluded that the State failed to state a claim upon which relief could be granted with respect to section 26–20–7 of the Utah Code.

¶ 56 In sum, we hold that the district court erred in dismissing the State's UFCA claims under rule 12(b)(6) of the Utah Rules of Civil Procedure.

### B. Fraudulent Misrepresentation

 ¶ 57 The district court also dismissed the State's fraudulent misrepresentation claims, stating that its findings regarding the Complaint's lack of particularity "appl[ied] equally to its analysis under Rule 12(b)(6)" and that the state had "failed to allege fundamental elements of common law fraudulent misrepresentation." Because we addressed the particularity of the Second Amended Complaint above, we address only the district court's determination that the Complaint fails to allege fundamental elements of fraudulent misrepresentation. In doing so, we

---

scheme or receive a medical benefit; it requires that the false information be used in "determining rights to a *medical benefit.*" *Id.* § 26–20–3(2) (emphasis added). Moreover, a "medical benefit" is "a benefit paid or payable to a recipient or a *provider.*" *Id.* § 26–20–2(5) (emphasis added).

**11.** The pre-amendment version of the statute provided that "[n]o person may make or present or cause to be made or presented to an employee or officer of the state a claim for a medical benefit, knowing the claim to be false, fictitious, or fraudulent." *Id.* § 26–20–7(1) (2006). Our analysis applies equally to this version of the statute.

conclude that the Complaint satisfies rule 12(b)(6).

█ ¶ 58 To state a claim for fraudulent misrepresentation, a plaintiff must allege

(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Armed Forces Ins. Exch. v. Harrison,* 2003 UT 14, ¶ 16, 70 P.3d 35. (internal quotation marks omitted).

¶ 59 The Second Amended Complaint contains allegations that satisfy these nine elements. It alleges (1) that the Defendants reported or caused to be reported drug-pricing information to third-party reporting services; (2) the pricing information was presently existing; (3) it was false or fictitious; (4) the Defendants knew the information to be false; (5) the Defendants intended that the State would rely upon this reported information in determining Medicaid reimbursements and that the Defendants would benefit from reporting this false information; (6) "Utah Medicaid reasonably relied on the false pricing data in setting prescription drug reimbursement rates," as dictated by statutory and regulatory guidelines, and did not know of the falsity of the Defendants' data; (7) Utah Medicaid did in fact rely on the Defendants' data in reimbursing providers; (8) Medicaid was induced to do so by Defendants' false data; and (9) the State was injured by vastly overpaying claims. These allegations were sufficient to state a claim of fraudulent misrepresentation.

¶ 60 The district court faulted the Second Amended Complaint for not pleading "how the individual defendant[s'] actions led the State to set its reimbursement rates or how it acted in reasonable reliance on the pricing information." The court relied again on the publication from the Department of Health

regarding AWPs, stating that the State's "inability to plead reasonable reliance may be explained by its public acknowledgment in 1999 that it understood the actual acquisition costs for generic drugs [were] 60.1% below AWP and that AWP does not in fact reflect market prices."

¶ 61 We reject this analysis for two reasons. First, the State clearly pled that it reasonably relied on the pricing information provided by Defendants to the reporting services. This reasonable reliance is underscored by the State's allegations that it was required to follow statutory and regulatory guidelines in calculating reimbursements, and that AWPs were relevant each and every time the State made such calculations. Second, the district court's consideration of an article from the Department of Health on the issue of "reasonable reliance" was procedurally inappropriate. It is true, as the district court noted, that items of public record will not convert rule 12(b)(6) motions to motions for summary judgment under rule 56. *Alvarez v. Galetka,* 933 P.2d 987, 990 n. 6 (Utah 1997). However, taking this information into consideration on the fact-sensitive topic of reliance and the State's knowledge of inflated AWPs went beyond the bounds of judging the Complaint on its face and went to the merits of the State's factual allegations.

¶ 62 We hold that the Second Amended Complaint adequately pled the required elements of fraudulent misrepresentation. We therefore reverse the district court's dismissal of the State's fraudulent misrepresentation cause of action under rule 12(b)(6) of the Utah Rules of Civil Procedure.

### III. STATUTE OF LIMITATIONS

█ ¶ 63 The State also asserts that the district court erred in applying a one-year statute of limitations to its UFCA cause of action and dismissing all the State's UFCA claims alleged to have occurred before April 30, 2006. The State contends that amendments to the UFCA in 2007 created a longer limitations period and that the legislature expressly made this provision retroactive; thus, the new limitations period should apply. Alternatively, the State argues that the one-

year statute of limitations, which applies to causes of action "upon a statute ... for a ... penalty to the state" does not apply to its claims for restitution and costs of enforcement under the UFCA.[12]

■ ¶ 64 We affirm the district court's conclusion that the one-year statute of limitations for actions "upon a statute ... for a forfeiture or penalty to the state" applies to the State's UFCA cause of action, and affirm the court's dismissal of those claims alleged to have arisen before April 30, 2006. This conclusion is grounded in our recognition that once a cause of action expires, it may not be revived by statutory enactment. In addition, we reject the State's argument that its UFCA cause of action also seeks restitution and the costs of enforcement, to which the one-year limitations period is inapplicable. This question was unpreserved and fails on the merits.

¶ 65 Prior to the legislature's amendments to the UFCA in 2007, the Act contained no specific statute of limitations. The UFCA did contain a "civil penalties" provision, *id.* § 26–20–9.5 (2006), and Utah Code section 78–12–29(3) provided that "[a]n action may be brought within one year ... upon a statute ... for a forfeiture or penalty to the state."

¶ 66 In 2007, the legislature amended the UFCA to provide that

[a]n action under this chapter may not be brought after the later of:

(a) six years after the date on which the violation was committed; or

(b) three years after the date an official of the state charged with responsibility to act in the circumstances discovers the violation, but in no event more than ten years after the date on which the violation was committed.

*Id.* § 26–20–15(1). The amendments also provided that "[a] civil action brought under this chapter may be brought for acts occurring prior to the effective date of this section if the limitations period ... has not lapsed." *Id.* § 26–20–15(2). The effective date of the amendment was April 30, 2007.

■ ¶ 67 The State argues that the plain language of the amended UFCA applies the new statute of limitations period retroactively to "acts occurring prior to" April 30, 2007, and thus the one-year statute of limitations is irrelevant. We disagree. The amended UFCA cannot resurrect claims that have already expired under the one-year limitations period. "[T]his court has consistently maintained that the defense of an expired statute of limitations is a vested right." *Roark v. Crabtree,* 893 P.2d 1058, 1062 (Utah 1995). " 'Accordingly, after a cause of action has become barred by the statute of limitations the defendant *has a vested right to rely on that statute as a defense* ... which cannot be taken away by legislation ... or by affirmative act, such as lengthening of the limitation period.' " *Id.* at 1063 (alterations in original) (quoting 51 AmJur 2d *Limitation of Actions* § 44 (1970)).

¶ 68 Alternatively, the State argues that the one-year limitations period applies only to "penalt[ies] to the state," whereas the UFCA provides remedies that include not only penalties, but also "full and complete restitution to the state" and "costs of enforcement" of the Act. We reject this argument for two reasons. Foremost, the State did not raise this issue below and waited to make it until its reply brief on appeal. Thus, the issue is unpreserved. *See Allen v. Friel,* 2008 UT 56, ¶ 16, 194 P.3d 903. Second, the State's argument fails on the merits. The pre-amended version of the UFCA stated that "[a]ny person who violates this chapter shall, in addition to other penalties provided by law, be subject to the following *civil penalties.*" UTAH CODE § 26–20–9.5(1) (2006) (emphasis added). It then listed four reme-

---

12. On appeal, the State also argues that different statutes of limitation govern its UFCA claims: a four-year period under the "catch all" statute of limitations, *see* UTAH CODE § 78B–2–307(3), or a six-year period for actions brought "upon any contract, obligation or liability founded upon an instrument in writing," *see id.* § 78B–2–309(2). The State did not preserve these issues below.

Instead, its briefing argued solely for the retroactive application of the amended UFCA's statute of limitations. We could locate only a fleeting mention of the four-year "catch all" provision, which occurred during oral argument on the Defendants' motion to dismiss the *first amended complaint.* This was insufficient to preserve the issue for our review.

dies: "full and complete restitution," "costs of enforcement," treble damages, and a civil penalty of up to $2,000. *Id.* § 26–20–9.5(1)(a)–(d) (2006). Contrary to the State's interpretation, the statutory language plainly considered each of these remedies a "civil penalty."

¶ 69 Accordingly, we affirm the district court's dismissal of the State's UFCA claims alleged to have arisen before April 30, 2006, which marks one year before the effective date of the UFCA's amendments.[13]

## IV. BOEHRINGER INGELHEIM CORP.

¶ 70 Finally, with respect to defendant BIC, we note that the district court gave the State leave to amend the first amended complaint to focus on BIC's "separate corporate existence and identify only those drugs for which BIC, and not its corporate subsidiaries, is legally responsible." It further noted that three of BIC's subsidiaries had not been named as defendants or served with process, but still were the focus of the State's allegations. In a separate order dismissing the Second Amended Complaint against BIC, the court determined that the State had failed to list any drugs manufactured by BIC and continued to "lump[ ] BIC with several independent subsidiaries which are not named or served defendants in this case."

¶ 71 Our review of the Second Amended Complaint leads us to conclude that the State did not fulfill the district court's requirements. The Second Amended Complaint makes allegations against BIC subsidiaries without naming them as defendants. It also does not identify which prescription drugs BIC manufactures, distributes, markets, or sells. There is no indication that BIC is a proper defendant in this case. We therefore affirm the district court's dismissal of the Second Amended Complaint as to BIC.

---

13. This holding has no bearing on the State's

## CONCLUSION

¶ 72 We hold that the district court incorrectly applied rule 9(b) to the State's UFCA and fraudulent misrepresentation causes of action. We have articulated the appropriate 9(b) standard for pleadings that allege a widespread scheme to submit multiple false claims and engage in fraud over a long period. Although the State's Complaint fails to meet the standard we adopt today, we direct the district court to grant the State leave to amend the Complaint in accordance with this opinion. Moreover, we reverse the district court's determination that the State's causes of action failed under rule 12(b)(6) of the Utah Rules of Civil Procedure.

¶ 73 We also affirm the district court's application of a one-year statute of limitations to the State's UFCA cause of action for violations occurring before April 30, 2006. The enactment of a longer statute of limitations in 2007 could not revive those claims that had already expired. Finally, as to defendant BIC, we affirm the court's dismissal of the State's causes of action. There is no indication that BIC is a proper defendant in this case. The case is remanded to the district court for proceedings consistent with this opinion.

Justice DURHAM authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, Justice PARRISH, and Justice LEE joined.

fraudulent misrepresentation cause of action.